1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   P. CRAIG CARDON, Cal Bar No. 168646
2  ccardon@sheppardmullin.com
   JAY T. RAMSEY, Cal Bar No. 273160
3  jramsey@sheppardmullin.com
   ALYSSA SONES, Cal Bar No. 318359
4  asones@sheppardmullin.com
   KEVIN MURPHY, Cal Bar No. 346041
5  kemurphy@sheppardmullin.com
   1901 Avenue of the Stars, Suite 1600
6  Los Angeles, California  90067-6017
   Telephone:  (310) 228-3700
7  Facsimile:  (310) 228-3701

8  *Attorneys for Defendant*
   AFTERSHOKZ, LLC

9

10                    UNITED STATES DISTRICT COURT

11         CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13  ROBERT CONOHAN, individually      Case No. 2:24-cv-08786 MWF (Ex)
    and on behalf of all others similarly
14  situated;                          *Hon. Michael W. Fitzgerald*

15              Plaintiff,            **DEFENDANT AFTERSHOKZ,
                                       LLC'S REQUEST FOR JUDICIAL
16        v.                           NOTICE IN SUPPORT OF NOTICE
                                       OF MOTION AND MOTION TO
17  AFTERSHOKZ, LLC, a Texas limited   DISMISS PLAINTIFF'S FIRST
    liability company; DOES 1 through 25, AMENDED CLASS ACTION
18  inclusive                          COMPLAINT**

19              Defendant.            [*Filed concurrently with Notice of
                                       Motion and Motion to Dismiss and
20                                     Proposed Order*]

21                                     Date:      November 18, 2024
                                       Time:      10:00 a.m.
22                                     Ct. Rm.:   5A

23

24

25

26

27

28

## I.  **INTRODUCTION**

Pursuant to Federal Rule of Evidence 201, Defendant Aftershokz, LLC, asks this Court to take judicial notice of the following documents in connection with Aftershokz's Motion to Dismiss Plaintiff's First Amended Complaint, submitted concurrently herewith:

1.      The California State Assembly Committee on Public Safety's April 7, 2015, analysis of Assembly Bill 929, a true and correct copy of which is attached hereto as **Exhibit A**.

2.      The California State Assembly Committee on Privacy and Consumer Protection's April 21, 2015, analysis of Assembly Bill 929, a true and correct copy of which is attached hereto as **Exhibit B**.

3.      The California State Assembly Committee on Appropriations' April 29, 2015, analysis of Assembly Bill 929, a true and correct copy of which is attached hereto as **Exhibit C**.

4.      The California State Assembly Committee on Public Safety's March 29, 2016, analysis of Assembly Bill 1924, a true and correct copy of which is attached hereto as **Exhibit D**.

5.      The California State Assembly Committee on Appropriations' May 4, 2016, analysis of Assembly Bill 1924, a true and correct copy of which is attached hereto as **Exhibit E**.

6.      The California State Senate Committee on Public Safety's June 28, 2016, analysis of Assembly Bill 1924, a true and correct copy of which is attached hereto as **Exhibit F**.

## II.  **JUDICIAL NOTICE IS PROPER**

A matter that is properly the subject of judicial notice may be considered along with the complaint when deciding a motion to dismiss.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when

ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").  The above legislative information concerning California Penal Code section 638.50-638.53 is judicially noticeable under Rule 201(b).  In fact, courts have routinely taken judicial notice of legislative history of state statutes in the Ninth Circuit.  *See Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005) (taking judicial notice of California statute's legislative history); *Louis v. McCormick & Schmick Rest. Corp*., 460 F. Supp. 2d 1153, 1155 n.4 (C.D. Cal. 2006) ("Under Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of the records of state courts, the legislative history of state statutes, and the records of state administrative agencies."); *see also Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("Legislative history is properly a subject of judicial notice."); *Stone v. Sysco Corp*., No. 16-CV-01145-DAD-JLT, 2016 WL 6582598, at *4 (E.D. Cal. Nov. 7, 2016) ("[C]ourt[s] may properly take judicial notice of legislative history, including committee reports.") (citing *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 945 n.2 (9th Cir. 2013)).  Thus, Exhibits A-F should be judicially noticed by the Court.

## III.   <u>CONCLUSION</u>

Based on the foregoing, Aftershokz respectfully requests that the Court take judicial notice of the attached exhibits.

1    Dated:  October 18, 2024        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

2

3                                    By        _____
                                                      */s/ P. Craig Cardon*
4                                                    P. CRAIG CARDON
                                                     JAY T. RAMSEY
5                                                    ALYSSA SONES
6                                                    KEVIN MURPHY

7                                                *Attorneys for Defendant*
8                                                    AFTERSHOKZ, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4883-1779-3776.1    DEFENDANT'S REQUEST FOR JUDICIAL NOTICE ISO MOTION TO DISMISS FIRST
AMENDED COMPLAINT

# EXHIBIT A

AB 929
Page 1

Date of Hearing:  April 7, 2015
Counsel:          Gabriel Caswell

ASSEMBLY  COMMITTEE  ON PUBLIC SAFETY
Bill Quirk, Chair

AB 929 (Chau) – As Introduced  February 26, 2015
As Proposed to be Amended  in Committee

**SUMMARY**:  Authorizes  state and local law enforcement  to use pen register and trap and trace
devices under state law, and permits  the issuance of emergency  pen registers  and trap and trace
devices.  Specifically,  **this bill**:

1) Defines  "pen register" as a device or process that records or decodes dialing,  routing,
   addressing,  or signaling  information  transmitted  by an instrument  or facility  from which  a
   wire or electronic  communication  is transmitted,  but not the contents of a communication.
   "Pen register"  does not include  a device or process used by a provider  or customer  of a wire
   or electronic  communication  service for billing,  or recording as an incident  to billing,  for
   communications  services  provided  by such provider,  or a device or process used by a
   provider or customer of a wire communication  service for cost accounting  or other similar
   purposes in the ordinary course of its business.

2) Defines  "trap and trace device"  means a device or process that captures the incoming
   electronic  or other impulses  that identify  the originating  number or other dialing,  routing,
   addressing,  or signaling  information  reasonably  likely  to identify  the source of a wire or
   electronic  communication,  but not the contents  of a communication.

3) Specifies  the offenses  for which an order for installation  of a pen register of a trap and trace
   device may be granted, as specified  here for:

   a) Stolen or embezzled  property;

   b) Property or things  used as the means of committing  a felony;

   c) Property or things  in the possession of any person with the intent  to use them as a means
      of committing  a public  offense,  or in the possession of another to whom he or she may
      have delivered  them for the purpose of concealing  them or preventing  them from being
      discovered;

   d) Evidence  that tends to show a felony has been committed,  or tends to show that a
      particular  person has committed  a felony;

   e) Evidence  that tends to show that sexual exploitation  of a child,  in violation  of Section
      311.3, or possession of matter depicting  sexual conduct  of a person under 18 years of age,
      in violation  of Section 311.11 has occurred or is occurring;

**f)** The location of a person who is unlawfully restrained or reasonably believed to be a witness in a criminal investigation or for whose arrest there is probable cause;

**g)** Evidence that tends to show a violation of Section 3700.5 of the Labor Code, or tends to show that a particular person has violated Section 3700.5 of the Labor Code; and

**h)** Evidence that tends to show that either a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code has been committed or is being committed, tends to show that a particular person has committed a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code, or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code, or will assist in locating an individual who has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code.

4) Provides, except as specified, a person may not install or use a pen register or a trap and trace device without first obtaining a court order.

   a) Permits a provider of electronic or wire communication service to use a pen register or a trap and trace device for any of the following purposes:

      i) To operate, maintain, and test a wire or electronic communication service;

      ii) To protect the rights or property of the provider;

      iii) To protect users of the service from abuse of service or unlawful use of service;

      iv) To record the fact that a wire or electronic communication was initiated or completed to protect the provider, another provider furnishing service toward the completion of the wire communication, or a user of that service, from fraudulent, unlawful, or abusive use of service; and

      v) If the consent of the user of that service has been obtained.

   b) Provides that a violation of this section is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment for 16 months, two or three years, or by both that fine and imprisonment; and

   c) Provides that a good faith reliance on specified orders is a complete defense to a civil or criminal action brought under this section or under this chapter.

5) Specifies that information acquired solely pursuant to the authority for a pen register or trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the telephone number.

6) Provides that the magistrate, before issuing the order, may examine on oath the person seeking the warrant and any witnesses the person may produce, and shall take his or her affidavit or their affidavits in writing, and cause the affidavit or affidavits to be subscribed by the parties making them.

7) Specifies that a peace officer may make an application to a magistrate for an order or an extension of an order authorizing or approving the installation and use of a pen register or a trap and trace device. The application shall be in writing under oath or equivalent affirmation, and shall include the identity of the peace officer making the application and the identity of the law enforcement agency conducting the investigation. The applicant shall certify that the information likely to be obtained is relevant to an ongoing criminal investigation and shall include a statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates.

8) Provides that if the magistrate finds that the information likely to be obtained by the installation and use of a pen register or a trap and trace device is relevant to an ongoing criminal investigation, and finds that there is probable cause to believe that the pen register or trap and trace device will lead to obtaining evidence of a crime, contraband, fruits of crime, things criminally possessed, weapons, or other things by means of which a crime has been committed or reasonably appears about to be committed, or will lead to learning the location of a person who is unlawfully restrained or reasonably believed to be a witness in a criminal investigation or for whose arrest there is probable cause, the magistrate shall enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device.

9) Provides that an order issued by a magistrate shall specify all of the following:

   a) The identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached;

   b) The identity, if known, of the person who is the subject of the criminal investigation;

   c) The number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached and, in the case of a trap and trace device, the geographic limits of the trap and trace order;

   d) A statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates;

   e) The order shall direct, if the applicant has requested, the furnishing of information, facilities, and technical assistance necessary to accomplish the installation of the pen register or trap and trace device; and

   f) An order issued under this section shall authorize the installation and use of a pen register or a trap and trace device for a period not to exceed 60 days.

10) Provides that extensions of the original order may be granted upon a new application for an order if the officer shows that there is a continued probable cause that the information or items sought under this subdivision are likely to be obtained under the extension. The period

of an extension shall not exceed 60 days.

11) Provides that an order or extension order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that the order be sealed until otherwise ordered by the magistrate who issued the order, or a judge of the superior court, and that the person owning or leasing the line to which the pen register or trap and trace device is attached, or who has been ordered by the court to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber or to any other person, unless or until otherwise ordered by the magistrate or a judge of the superior court.

12) States that upon the presentation of an order issued by a magistrate for installation of a pen register or trap and trace device, by a peace officer authorized to install and use a pen register, a provider of wire or electronic communication service, landlord, custodian, or other person shall immediately provide the peace officer all information, facilities, and technical assistance necessary to accomplish the installation of the pen register unobtrusively and with a minimum of interference with the services provided to the party with respect to whom the installation and use is to take place, if the assistance is directed by the order.

13) Provides upon the request of a peace officer authorized to receive the results of a trap and trace device, a provider of a wire or electronic communication service, landlord, custodian, or other person shall immediately install the device on the appropriate line and provide the peace officer all information, facilities, and technical assistance, including installation and operation of the device unobtrusively and with a minimum of interference with the services provided to the party with respect to whom the installation and use is to take place, if the installation and assistance is directed by the order.

14) States that unless otherwise ordered by the magistrate, the results of the pen register or trap and trace device shall be provided to the peace officer at reasonable intervals during regular business hours for the duration of the order.

15) Provides that except as otherwise provided, upon an oral application by a peace officer, a magistrate may grant oral approval for the installation and use of a pen register or a trap and trace device, without an order, if he or she determines all of the following:

   a) There are grounds upon which an order could be issued under specified normal application for a pen register or trap and trace device.

   b) There is probable cause to believe that an emergency situation exists with respect to the investigation of a crime.

   c) There is probable cause to believe that a substantial danger to life or limb exists justifying the authorization for immediate installation and use of a pen register or a trap and trace device before an order authorizing the installation and use can, with due diligence, be submitted and acted upon.

16) Provides that by midnight of the second full court day after the pen register or trap and trace device is installed by oral application, a written application pursuant to Penal Code Section 638.52 shall be submitted by the peace officer who made the oral application to the

magistrate who orally approved the installation and use of a pen register or trap and trace device. If an order is issued pursuant to Section 638.52, the order shall also recite the time of the oral approval and shall be retroactive to the time of the original oral approval.

17) Specifies that in the absence of an authorizing order, the use shall immediately terminate when the information sought is obtained, when the application for the order is denied, or by midnight of the second full court day after the pen register or trap and trace device is installed, whichever is earlier.

18) Provides that a provider of a wire or electronic communication service, landlord, custodian, or other person who provides facilities or technical assistance pursuant to this section shall be reasonably compensated by the requesting peace officer's law enforcement agency for the reasonable expenses incurred in providing the facilities and assistance.

**EXISTING FEDERAL LAW**:

1) Provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. (U.S. Const., 4th Amend.; Cal. Const., art. I, § 13.)

2) Provides, except as provided, no person may install or use a pen register or a trap and trace device without first obtaining a court order under section 3123 of this *title [18 USCS § 3123]* or under the Foreign Intelligence Surveillance Act of 1978 (*50 U.S.C. 1801* et seq.). (18 USCS § 3121.)

   a) The prohibition does not apply with respect to the use of a pen register or a trap and trace device by a provider of electronic or wire communication service relating to the operation, maintenance, and testing of a wire or electronic communication service or to the protection of the rights or property of such provider, or to the protection of users of that service from abuse of service or unlawful use of service; or to record the fact that a wire or electronic communication was initiated or completed in order to protect such provider, another provider furnishing service toward the completion of the wire communication, or a user of that service, from fraudulent, unlawful or abusive use of service; or where the consent of the user of that service has been obtained. (18 USCS § 3121, subds. (a) & (b).)

   b) A government agency authorized to install and use a pen register or trap and trace device under this chapter (*18 USCS §§ 3121* et seq.0 or under State law shall use technology reasonably available to it that restricts the recording or decoding of electronic or other impulses to the dialing, routing, addressing, and signaling information utilized in the processing and transmitting of wire or electronic communications so as not to include the contents of any wire or electronic communications. (18 USCS § 3121, subd. (c).)

   c) Whoever knowingly violates the prohibition shall be fined under this title or imprisoned not more than one year, or both.

3) Provides that unless prohibited by state law, a state investigative or law enforcement officer may make application for an order or an extension of an order authorizing or approving the installation and use of a pen register or a trap and trace device under this chapter, in writing under oath or equivalent affirmation, to a court of competent jurisdiction of such state. (18 USCS § 3122.)

4) Provides that an attorney for the Government, upon an application, the court shall enter an ex parte order authorizing the installation and use of a pen register or trap and trace device anywhere within the United States, if the court finds that the attorney for the Government has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation. The order, upon service of that order, shall apply to any person or entity providing wire or electronic communication service in the United States whose assistance may facilitate the execution of the order. Whenever such an order is served on any person or entity not specifically named in the order, upon request of such person or entity, the attorney for the Government or law enforcement or investigative officer that is serving the order shall provide written or electronic certification that the order applies to the person or entity being served. (18 USCS § 3121, subd. (a)(1).)

5) Provides that a state investigative or law enforcement officer, upon an application made as specified, the court shall enter an ex parte order authorizing the installation and use of a pen register or trap and trace device within the jurisdiction of the court, if the court finds that the State law enforcement or investigative officer has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation. (18 USCS § 3121, subd. (a)(2).)

6) Provides that where the law enforcement agency implementing an ex parte order under this subsection seeks to do so by installing and using its own pen register or trap and trace device on a packet-switched data network of a provider of electronic communication service to the public, the agency shall ensure that a record will be maintained which will identify: (18 USCS § 3121, subd. (a)(3).)

   a) Any officer or officers who installed the device and any officer or officers who accessed the device to obtain information from the network;

   b) The date and time the device was installed, the date and time the device was uninstalled, and the date, time, and duration of each time the device is accessed to obtain information;

   c) The configuration of the device at the time of its installation and any subsequent modification thereof; and

   d) Any information which has been collected by the device.

7) Provides to the extent that the pen register or trap and trace device can be set automatically to record this information electronically, the record shall be maintained electronically throughout the installation and use of such device. (18 USCS § 3121, subd. (a)(3).)

8) States that the record maintained shall be provided ex parte and under seal to the court which entered the ex parte order authorizing the installation and use of the device within 30 days after termination of the order (including any extensions thereof). (18 USCS § 3121, subd.

(a)(3).)

9) An order issued for installation of a pen register or track and trace device shall include: (18 USCS § 3121, subd. (b).)

   a) The identity, if known, of the person to whom is leased or in whose name is listed the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied;

   b) The identity, if known, of the person who is the subject of the criminal investigation;

   c) The attributes of the communications to which the order applies, including the number or other identifier and, if known, the location of the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied, and, in the case of an order authorizing installation and use of a trap and trace device, the geographic limits of the order; and

   d) A statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates; and

   e) Shall direct, upon the request of the applicant, the furnishing of information, facilities, and technical assistance necessary to accomplish the installation of the pen register or trap and trace device.

10) Provides that an order issued under this section shall authorize the installation and use of a pen register or a trap and trace device for a period not to exceed sixty days. (18 USCS § 3121, subd.(c).)

    a) Provides that extensions of such an order may be granted, but only upon an application for an order and upon the judicial finding required as specified. The period of extension shall be for a period not to exceed sixty days.

    b) States that nondisclosure of existence of pen register or a trap and trace device. An order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that the order be sealed until otherwise ordered by the court; and the person owning or leasing the line or other facility to which the pen register or a trap and trace device is attached, or applied, or who is obligated by the order to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court.

11) Provides that notwithstanding any other provision, any investigative or law enforcement officer, specially designated by the Attorney General, the Deputy Attorney General, the Associate Attorney General, any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General, or by the principal prosecuting attorney of any state or subdivision thereof acting pursuant to a statute of that state, who reasonably determines that: (18 USCS § 3125.)

a) an emergency situation exists that involves;

b) immediate danger of death or serious bodily injury to any person;

c) conspiratorial activities characteristic of organized crime;

d) an immediate threat to a national security interest; or

e) an ongoing attack on a protected computer that constitutes a crime punishable by a term of imprisonment greater than one year;

12) Provides that in the absence of an authorizing order, such use shall immediately terminate when the information sought is obtained, when the application for the order is denied or when forty-eight hours have lapsed since the installation of the pen register or trap and trace device, whichever is earlier. (18 USCS § 3125.)

## EXISTING STATE LAW:

1) Defines a "search warrant" as a written order in the name of the people, signed by a magistrate and directed to a peace officer, commanding him or her to search for a person or persons, a thing or things, or personal property, and in the case of a thing or things or personal property, bring the same before the magistrate. (Pen. Code, § 1523.)

2) States that a search warrant may be issued upon any of the following grounds:

a) When the property was stolen or embezzled.

b) When the property or things were used as the means of committing a felony.

c) When the property or things are in the possession of any person with the intent to use them as a means of committing a public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing them from being discovered.

d) When the property or things to be seized consist of any item or constitute any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony.

e) When the property or things to be seized consist of evidence that tends to show that sexual exploitation of a child, or possession of matter depicting sexual conduct of a person under the age of 18 years, has occurred or is occurring.

f) When there is a warrant to arrest a person.

g) When a provider of electronic communication service or remote computing service has records or evidence, showing that property was stolen or embezzled constituting a misdemeanor, or that property or things are in the possession of any person with the intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom he or she may have delivered them for the purpose of

concealing them or preventing their discovery.

h) When a provider of electronic communication service or remote computing service has records or evidence showing that property was stolen or embezzled constituting a misdemeanor, or that property or things are in the possession of any person with the intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their discovery.

i) When the property or things to be seized include an item or any evidence that tends to show a violation of the Labor Code, as specified.

j) When the property or things to be seized include a firearm or any other deadly weapon at the scene of, or at the premises occupied or under the control of the person arrested in connection with, a domestic violence incident involving a threat to human life or a physical assault.

k) When the property or things to be seized include a firearm or any other deadly weapon that is owned by, or in the possession of, or in the custody or control of, a person described in subdivision (a) of Section 8102 of the Welfare and Institutions Code.

l) When the property or things to be seized include a firearm that is owned by, or in the possession of, or in the custody or control of, a person who is subject to the prohibitions regarding firearms under specified provisions of the Family Code.

m) When the information to be received from the use of a tracking device constitutes evidence that tends to show that either a felony or a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code.

n) When a sample of the blood of a person constitutes evidence that tends to show a violation of misdemeanor driving under the influence and the person from whom the sample is being sought has refused an officer's request to submit to, or has failed to complete, a blood test.

o) When the property or things to be seized are firearms or ammunition or both that are owned by, in the possession of, or in the custody or control of a person who is the subject of a gun violence restraining order. This final provision does not go into effect until January 1, 2016. (Pen. Code, § 1524, subd. (a).)

3) Provides that a search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person to be searched or searched for, and particularly describing the property, thing, or things and the place to be searched. (Pen. Code, § 1525.)

4) Requires a magistrate to issue a search warrant if he or she is satisfied of the existence of the grounds of the application or that there is probable cause to believe their existence. (Pen. Code, § 1528, subd. (a).)

**FISCAL EFFECT**:  Unknown

**COMMENTS**:  >

1) **Author's Statement**:  According to the author, "As technology advances, criminals are becoming more and more sophisticated in their use of technology to commit crimes and avoid law enforcement.  As a result, law enforcement officials have a variety of electronic tools to counter this and help them apprehend criminals in this age of rapidly changing technology.

   "One of the tools available to law enforcement is called a 'pen register' which allows law enforcement officers to record all outgoing numbers from a particular telephone line.  In addition, another tool law enforcement uses is called a "trap and trace device" which allows them to record what numbers have called a specific telephone line, i.e. all incoming phone numbers.  Both pen registers and trap and trace devices do not record audio or text messages and cannot be used to obtain real-time location data on a cellular telephone.  But these tools are extremely useful for law enforcement in situations such as gang and narcotic investigations.

   "AB 929 would authorize state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations.  The bill will require law enforcement officers to obtain a court order before using such devices by providing a judge with information that the use of information is relevant to an ongoing criminal investigation, and that there is probable cause to believe that the pen register or trap and trace device will lead to obtaining evidence of a crime.

   "This higher standard of proof (probable cause vs. reasonable suspicion) is more restrictive than under federal law and is more consistent with California law governing search warrants.  The bill would prohibit the installation and use of the device for longer than 60 days, but would permit an extension if there is proof of continuing probable cause to a judge. "

2) **General Background:**  Federal law allows law enforcement agencies to use pen register and trap and trace devices, but they must obtain a court order from a judge prior to the installation of the device. However, during an emergency situation, law enforcement agencies may use these devices without a court order if they obtain the court order within 48 hours of the use of the device. Law enforcement agencies must demonstrate that there is reasonable suspicion that the use of the device is relevant to an ongoing criminal investigation and will lead to obtaining evidence of a crime for a judge to authorize the use.

   Though federal law authorizes states and local law enforcement officers to use pen register and trap and trace devices by obtaining a court order first, it does not allow them to obtain an emergency order unless there is a state statute authorizing and creating a process for states and local law enforcement officers to do so.  To date, California does not have a state statute authorizing the use of pen registers or trap and trace devices.

   Pen registers and track and trace devices generally track incoming and outgoing telephone calls.  They are often utilized by law enforcement to track which people in an investigation are communicating with one another and at what times.  Unlike a wiretap authorization, pen registers and track and trace devices do not provide law enforcement with the content of the

messages which are transmitted. Wiretap authorizations are therefore subject to a much higher standard of scrutiny than the orders contained within this bill. Under federal law, these authorizations can be granted on a reasonable suspicion standard, while search warrants are subject to a higher standard of probable cause.

3) **Probable Cause Standard**: Though the federal standard for the issuance of a pen register or a trap and trace device is "reasonable suspicion" California law arguably requires a higher "probable cause" standard. (86 Ops.Cal.Atty.Gen 198 (2003).) This bill imposes the probable cause standard and is therefore compliant with both state and federal law.

4) **The Proposed Amendments:** The proposed amendments were drafted by committee staff in consultation with the Los Angeles District Attorney's Office and the American Civil Liberties Union (ACLU). The amendments are an attempt to address a number of concerns raised by the ACLU. Namely, the amendments limit the application of these orders to the same circumstances for which law enforcement officers can request the issuance of a search warrant. Additionally, the amendments permit a judge for whom a request has been made for an order to question the law enforcement agent pertaining to the need for the information. The amendments also clarify that any location information obtained by a pen register or a track and trace device is limited to the information that is contained in the telephone number (e.g. the area code). The amendments address what information obtained pursuant to the bill can be eventually made public, subject to the limitations of an ongoing investigation. Finally, the amendments place some technical limits on the application of the section to ensure that the orders are limited to the contents of the limitations placed in the bill.

5) **Attorney General Opinion:** In 2003 the District Attorney of Contra Costa County requested an opinion of the Attorney General on the issue of whether or not state or local law enforcement had the authority to seek a state court order permitting a state law enforcement officer to install a pen register or a trap and trace device. (86 Ops.Cal.Atty.Gen 198 (2003).) The Attorney General opined as follows:

"1. The federal statutes governing the installation of pen registers and trap and trace devices do not provide authority for issuance of a state court order permitting a state law enforcement officer to install or use pen registers or trap and trace devices.

"2. The state statutes governing the issuance of administrative subpoenas do not provide authority for a state law enforcement officer to install or use pen registers or trap and trace devices.
"A 'pen register' records the numbers dialed out from a particular telephone line. ( *Smith v. Maryland (1979) 442 U.S. 735, 736,;[1] People v. Blair (1979) 25 Cal.3d 640, 654, fn. 11.*) A "trap and trace device" records the originating telephone numbers of the calls dialed into a particular telephone line. ( *People v. Suite (1980) 101 Cal.App.3d 680, 684.)* n1 The placement of pen registers and trap and trace devices allows law enforcement officers to obtain such information as the names of suspects in an investigation, the identities and

---

[1] Pen registers and trap and trace devices are not "wiretaps," that is, they do not eavesdrop on or record telephone conversations. ( *Smith v. Maryland, supra, 442 U.S. at p. 736, fn. 1;* => *People v. Blair, supra, 25 Cal.3d at p. 654, fn. 11; 69 Ops.Cal.Atty.Gen. 55, 58 (1986).)* Generally speaking, the legal requirements for placing a wiretap are more stringent than those for placing a pen register or trap and trace device. (69 Ops.Cal.Atty.Gen, *supra,* at pp. 56-58.)

relationship between individuals suspected of engaging in criminal activity, especially in conspiracies, and the location of fugitives.

"Search warrants issued by a court and subpoenas issued either by a court or grand jury are normally available to authorize the placement of pen registers and trap and trace devices in California. [2] The two questions presented for resolution concern whether federal statutes governing the installation of pen registers and trap and trace devices and state statutes governing the issuance of administrative subpoenas may also provide authority for state law enforcement officers to obtain telephone calling records. We conclude that these two additional sources of authority are not available to state law enforcement officers in the circumstances presented.

"1. Federal Statutes

"The Fourth Amendment to the United States Constitution guarantees 'the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures.' To determine whether a particular form of governmental surveillance is a "search" within the meaning of the Fourth Amendment, courts generally look to the leading case of *Katz v. United States (1967) 389 U.S. 347,* which involved eavesdropping by means of an electronic listening device placed on the outside of a telephone booth. (See, e.g., *Kyllo v. United States (2001) 533 U.S. 27, 32-33.)* In *Katz,* the court held that the eavesdropping in question constituted an unlawful search because it violated a subjective expectation of privacy that society recognized as reasonable. ( *Katz v. United States, supra, 389 U.S. at p. 353.)*

"In *Smith v. Maryland, supra, 442 U.S. 735,* the court followed the *Katz* standard, concluding that individuals have no Fourth Amendment expectation of privacy in the numbers dialed to or from their telephone lines. The court reasoned that telephone customers are generally aware that telephone companies routinely collect and use such information for various purposes including billing and system maintenance.

"In 1986, following the *Smith* decision, Congress enacted a statutory scheme *(18 U.S.C. §§ 3121-*3127) [3] regulating the use of pen registers and trap and trace devices. [4] As relevant for our purposes, section 3121 provides:

"(a) Except as provided in this section, no person may install or use a pen register or a trap and trace device without first obtaining a court order under section 3123 of this title . . . .(a)(2) Unless prohibited by State law, a State investigative or law enforcement officer may

---

[2] Law enforcement officers may also procure telephone calling information by obtaining the person's consent or if "exigent circumstances" are present. (See, e.g., *People v. Chapman (1984) 36 Cal.3d 981, 113; People v. Suite, supra, 101 Cal.App.3d at p. 687.)*

[3] All references hereafter to title 18 of the United States Code prior to footnote 7 are by section number only.

[4] The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (USA Patriot Act, Pub. L. No. 107-56) amended the definitions of "pen register" and "trap and trace device" to include processes that capture routing, addressing, or signaling information transmitted by an electronic communication facility. *(18 U.S.C. § 3127* (3), (4).) These amendments permit government officials to obtain information from computers and cell phones as well as from land-line telephones. (See *18 U.S.C. § 3121.)* Issues arising from these statutory amendments are beyond the scope of this opinion.

make application for an order or an extension of an order under section 3123 of this title authorizing or approving the installation and use of a pen register or trap and trace device under this chapter, in writing under oath or equivalent affirmation, to a court of competent jurisdiction of such State. (b) An application under subsection (a) of this section shall include (1) the identity of . . . the State law enforcement or investigative officer making the application and the identity of the law enforcement agency conducting the investigation; and (2) a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency.

"Section 3123 provides: (a)(2) Upon an application made under section 3122 of this title, the court shall enter an ex parte order authorizing the installation and use of a pen register or trap and trace device within the jurisdiction of the court if the court finds that . . . the State law enforcement or investigative officer has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation…(d) An order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that (1) the order be sealed until otherwise ordered by the court; and (2) the person owning or leasing the line to which the pen register or trap and trace device is attached, or who has been ordered by the court to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court.

"Thus, as a general rule, federal law forbids the use of pen registers and trap and trace devices without the consent of the telephone consumer or a court order. ( § 3121.) Significantly, the federal statutes do not allow state law enforcement officers to apply for a state court order if the order would be 'prohibited by State law.' ( § 3122(a)(2).) Accordingly, we must look to California law to determine if the federal statutes may provide authority for state law enforcement officers to obtain telephone calling records in the circumstances presented.[5]

"The California Constitution is a 'document of independent force' (*American Academy of Pediatrics v. Lungren (1997) 16 Cal.4th 307, 325),* which extends protection for civil rights broader than an independent of the parallel rights afforded by the United States Constitution. (*Id. at pp. 325-326; see People v. Pettingill (1978) 21 Cal.3d 231, 247; People v. Hannon (1977) 19 Cal.3d 588, 606.)* Section 13 of article I of the California Constitution protects "against unreasonable seizures and searches."[6] Our Supreme Court has held "that, in determining whether an illegal search has occurred under the provisions of our Constitution,

---

[5] We recognize that the California Constitution eliminates any judicially created independent state grounds for the exclusion of evidence. (Cal. Const., art. I, § 28, subd. (d); *In re Lance W. (1985) 37 Cal.3d 873, 886-887.)* As a result, telephone calling records would be admissible against a California defendant in a criminal trial even though their seizure violated the California Constitution, as long as th e records were admissible under the federal Constitution. (See, e.g., *People v. Bencomo (1985) 171 Cal.App.3d 1005, 1015; People v. Lissauer (1985) 169 Cal.App.3d 413, 419.)* Regardless of the evidence's admissibility, however, the underlying act of seizure in violation of the California Constitution would remain unlawful. ( *In re Lance W., supra, 37 Cal.3d at p. 886; People v. Martino (1985) 166 Cal.App.3d 777, 785, fn. 3.)*

[6] "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated . . . ." (Cal. Const., art. I, § 13.)

the appropriate test is whether a person has exhibited a reasonable expectation of privacy and, if so, whether that expectation has been violated by unreasonable governmental intrusion." (*Burrows v. Superior Court* (1974) 13 Cal.3d 238, 242-243.) In *Burrows,* the court concluded that bank customers have a reasonable expectation of privacy in the financial information they transmit to their banks, reasoning that it is impossible to participate in the economic life of contemporary society without maintaining a bank account and that the totality of a person's bank records provides a "virtual current biography." (*Id. at p. 247.)

"In *People v. Blair, supra, 25 Cal.3d 640,* the court rejected the rationale of *Smith v. Maryland, supra, 442 U.S. 735,* and concluded that telephone records, like the bank records found protected under California law in *Burrows v. Superior Court, supra, 13 Cal.3d 238,* were protected against unreasonable searches and seizures in California. (*Id.* at p. 653.) In *Blair,* the telephone records were obtained by a subpoena issued by a Federal Bureau of Investigation agent under authority of a United States Attorney as authorized by a federal grand jury. The court found that the federal subpoena was insufficient for purposes of the search and seizure provisions of the California Constitution since there had been no prior "judicial determination that law enforcement officials were entitled" to the records. (*Id.* at p. 655; see *Carlson v. Superior Court* (1976) 58 Cal.App.3d 13, 21-23.) Consequently, the seizure of the telephone records was ruled a violation of article I, section 13 of the California Constitution.

"We believe that telephone calling records would additionally be protected under article I, section 1 of the California Constitution, which provides: 'All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.'

"Under the rationale of *Burrows* and *Blair,* information obtained from pen registers and trap and trace devices would fall within the zone of privacy protected by the state Constitution, since the records of incoming or outgoing calls could lead to the discovery of an individual's 'virtual current biography.' (*People v. Blair, supra, 25 Cal.3d at p. 653; Burrows v. Superior Court, supra, 13 Cal.3d at p. 247; People v. Chapman, supra, 36 Cal.3d at p. 109.)

"Based upon the foregoing, we find that the California Constitution allows the placement of pen registers and trap and trace devices only if a judicial ruling is first obtained that the law enforcement officers are entitled to the records. (*See* 69 Ops.Cal.Atty.Gen., *supra,* at p. 59.) Do the court procedures set forth in federal law meet this state constitutional standard for prior judicial review? They do not.

"The federal statutory scheme permits state law enforcement officers to apply for a state court order authorizing the use of a pen register or trap and trace device based upon a written certification that the information is 'relevant to an ongoing criminal investigation.' (*18 U.S.C. § 3122*(b)(2).) Upon a proper application, the court *must* issue the order. (*18 U.S.C. § 3122*(a)(2).) The statutes do not authorize a court to go outside the written certification (*In re Order Authorizing Installation of Pen Reg. (M.D.Fla. 1994) 846 F.Supp. 1555, 1559),* thus making the judicial review 'ministerial in nature' (*United States v. Fregoso (8th Cir. 1995) 60 F.3d 1314, 1320).*

"Under *Borrows* and *Blair,* this federal statutory process is inadequate to protect a California resident's privacy interests in telephone calling records. As previously noted, the federal

subpoena in *Blair* was found not to constitute appropriate 'legal process' because issuance of the subpoena was a ministerial act with no 'judicial determination' that the issuer was 'entitled' to obtain the information. (*People v. Blair, supra, 25 Cal.3d at pp. 651, 655.*) A seizure of information is unreasonable when 'the character, scope, and relevancy of the material obtained were determined entirely by the exercise of the unbridled discretion of the police.' ( *People v. Chapman, supra, 36 Cal.3d at p. 113,* quoting *Burrows v. Superior Court, supra, 13 Cal.3d at p. 243); see People v. Blair, supra, 25 Cal.3d at p. 651.*)

"The federal statutes governing pen registers and trap and trace devices likewise fail the California constitutional test. No adequate prior judicial review is provided in the statutory scheme; rather, unbridled discretion is given to law enforcement officers.

"We conclude in answer to the first question that the federal statutes governing the installation of pen registers and trap and trace devices do not provide authority for issuance of a state court order permitting a state law enforcement officer to install or use pen registers or trap and trace devices."

"2. State Administrative Subpoena Statutes

"*Government Code section 11180*[7] authorizes the head of each of the state's departments to conduct investigations concerning matters relating to the subjects under the department's jurisdiction. Included within this power is the right to subpoena records. (§ 11181, subd. (e).) The department head may delegate subpoena powers to any officer of the department authorized to conduct the investigation. (§ 11182.)

"Significantly, the department head or designee may issue a subpoena for investigative purposes in the absence of any formal charge or court proceeding. (§§ 11180, 11181; *Brovelli v. Superior Court (1961) 56 Cal.2d 524, 527-528.*) The subpoenas are returnable directly to the department head, and no provision is made for notice to a third party--such as a telephone customer--or for the filing of a motion to quash or other formal opposition. (Compare §§ 11181, 11184, 11187 with *Pen. Code, §§ 1325, 1327*; Code Civ. Proc., §§ 1385.3, 1385.4.) Instead, if the subpoenaed party fails to comply with the subpoena, the department head may apply to a court for an order enforcing the subpoena. (§ 11187.) If it appears at the hearing 'that the subpoena was regularly issued . . . the court *shall* enter an order' enforcing the subpoena. ( § 11188, italics added.) Hence, judicial enforcement of administrative subpoenas is subject to a standard less exacting than that required for a criminal search warrant. (*See Craib v. Bulmash (1989) 49 Cal.3d 475, 481-486.*)

"Of course, 'department heads cannot compel the production of evidence in disregard of . . . the constitutional provisions prohibiting unreasonable searches and seizures.' ( *Brovelli v. Superior Court, supra, 56 Cal.2d at p. 529;* see also *Pacific-Union Club v. Superior Court (1991) 232 Cal.App.3d 60, 70, 79-80; Wood v. Superior Court (1985) 166 Cal.App.3d 1138, 1146-1147.*) '[A] governmental administrative agency is not in a special or privileged category, exempt from the right of privacy requirements which must be met and honored generally by law enforcement officials.' (*Board of Medical Quality Assurance v. Gherardini*

---

[7] All references hereafter to the Government Code are by section number only.

*(1979) 93 Cal.App.3d 669, 679-680; see Carlson v. Superior Court, supra, 58 Cal.App.3d at
p. 22* ['Surely an accused's constitutional right to privacy in his papers and records is not
diminished because law enforcement officials seek to obtain them by subpoena rather than by
warrant'].)

'As with the federal statutes governing the installation of pen registers and trap and trace
devices, the state administrative subpoena statutes do not contain a provision allowing for
prior judicial review establishing that the law enforcement officers are entitled to the records.
The California Constitution requires such prior review.

"We conclude in answer to the second question that the state statutes governing the issuance
of administrative subpoenas do not provide authority for a state law enforcement officer to
install or use pen registers or trap and trace devices

6) **Argument in Support**:  According to *The Los Angeles County District Attorney's Office* "A
'pen register' is an electronic device which records all numbers called from (outgoing) a
particular telephone line.  A 'trap and trace device' records what numbers had called a
specific telephone, i.e. all *incoming* phone numbers.  Pen registers and trap and trace devices
are extremely useful investigative tools.  They are used to identify accomplices, for example.

"Under federal law, law enforcement agencies must obtain a court order from a judge prior to
the installation of a pen register or trap and trace device.  According to Section 3123(a)(1) of
Title 18 of the United States Code, the court shall enter an ex parte order authorizing the
installation and use of a pen register or trap and trace device anywhere within the United
States, if the court (state or federal) finds that the attorney for the Government has certified to
the court that the information likely to be obtained by such installation and use is relevant to
an ongoing criminal investigation.

"Once obtained, a pen register or trap and trace device order cannot exceed 60 days in
duration.  As opposed to a wiretap, a pen register/trap and trace device only records the
numbers dialed to or from a particular phone number.  It does not record audio or text
messages, and cannot be used to obtain real-time location data on a cellular telephone.  (47
U.S.C. § 1002(a)(2)(B).)

"Section 3125 of Title 18 of the United States Code authorizes the installation and use of a
pen register/trap and trace device for 48 hours without a court order if an emergency situation
exists, including one that involves "immediate danger of death or serious bodily injury to any
person."  An emergency order can be obtained if grounds exist to obtain a written order, but
the emergency situation requires the installation and use of a pen register or a trap and trace
device before an order authorizing such installation and use can, with due diligence, be
obtained.  Within 48 hours after the installation has occurred, or begins to occur, an order
approving the installation or use in accordance with section 3123 must be obtained.

"Section 3125 of Title 18 of the United States Code authorizes any investigative or law
enforcement officer, specially designated by enumerated prosecutorial agencies, to obtain an
emergency pen register/trap and trace device.  However, there is no enabling statute in
California that allows California District Attorneys to utilize section 3125.

"Emergency/warrantless pen registers are lawful in only six states (AL, FL, GA, IA, TX, and
WA) which possess emergency state statutes in accordance with section 3125.

Notwithstanding, some law enforcement agencies in the remaining 44 states utilize warrantless emergency declarations. The result is that the requesting agency will unlawfully receive pen register or trap and trace data. This is a misdemeanor under federal law (18 U.S.C. § 3121). The individuals who improperly access the information may incur civil liability.

"Assembly Bill 929 would authorize state and local law enforcement officers to use pen register and trap and trace devices under state law. AB 929 would also authorize the issuance of emergency pen registers and trap and trace devices. Under the provisions of AB 929 a California court could issue a court order authorizing the use of a pen register and/or a trap and trace device upon a showing of probable cause which is a higher standard than the reasonable suspicion standard required under federal law.

"In 2003, the CA Attorney General's Office issued an opinion concluding that the "federal statutes governing the installation of pen registers and trap and trace devices do not provide authority for issuance of a state court order permitting a state law enforcement officer to install or use pen registers and trap and trace devices" because the federal pen register statute requires less than probable cause. (86 Ops.Cal.Att.Gen 198 (2003).) Our office's 2013 Search Warrant Manual cites this opinion and advises state law enforcement officers to establish probable cause in the affidavit seeking the installation or use of a pen register under the applicable federal statute.

"AB 929 would create a comprehensive pen register/ trap and trace device statute in the Penal Code to cover all requests for pen registers and trap and trace devices in California, including emergency pen registers."

## REGISTERED SUPPORT / OPPOSITION:

### Support

Los Angeles County Sheriff's Office (co-sponsor)
Los Angeles District Attorney's Office (co-sponsor)
Association for Los Angeles County Sheriffs
California District Attorneys Association
California State Sheriffs' Association
California Statewide Law Enforcement Association
Fraternal Order of Police
Long Beach Police Officers Association
Los Angeles Police Protective League
Los Angeles County Professional Peace Officers Association
Riverside Sheriffs Association
Sacramento county Deputy Sheriffs' Association
Santa Ana Police Officers Association

### Opposition

None

**Analysis Prepared by**:    Gabriel Caswell / PUB. S. / (916) 319-3744

# EXHIBIT B

`Date of Hearing:   April 21, 2015

## ASSEMBLY COMMITTEE ON PRIVACY AND CONSUMER PROTECTION
### Mike Gatto, Chair
### AB 929 (Chau) – As Amended April 15, 2015

**SUBJECT**: Pen registers:  authorized use

**SUMMARY**: Authorizes state and local law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices in telephone surveillance if there is probable cause to believe that their use will lead to evidence of a crime. Specifically, **this bill**:

1) Prohibits a person from installing or using a pen register or a trap and trace device without first obtaining a court order, as specified.

2) Authorizes a provider of electronic or wire communication service to use a pen register or a trap and trace device for any of the following purposes:

   a) To operate, maintain, and test a wire or electronic communication service;

   b) To protect the rights or property of the provider;

   c) To protect users of the service from abuse of service or unlawful use of service;

   d) To record the fact that a wire or electronic communication was initiated or completed to protect the provider, another provider furnishing service toward the completion of the wire communication, or a user of that service, from fraudulent, unlawful, or abusive use of service; or,

   e) If the consent of the user of that service has been obtained.

3) Provides that a violation of these provisions is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment, or by both that fine and imprisonment.

4) Declares that a good faith reliance on an order issued or an authorization made pursuant to these provisions is a complete defense to a civil or criminal action.

5) Authorizes a peace officer to apply to a magistrate for an order or an extension of an order authorizing or approving the installation and use of a pen register or a trap and trace device.

6) Requires the application to be in writing under oath or its equivalent, include the identity of the peace officer making the application and the identity of the law enforcement agency conducting the investigation.

7) Requires the applicant to certify that the information likely to be obtained is relevant to an ongoing criminal investigation and shall include a statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates.

8)  Requires the magistrate to enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device if the magistrate finds that the information likely to be obtained by the installation and use of a pen register or a trap and trace device is relevant to an ongoing criminal investigation, and finds that there is probable cause to believe that the pen register or trap and trace device will lead to obtaining evidence of a crime, contraband, fruits of crime, things criminally possessed, weapons, or other things by means of which a crime has been committed or reasonably appears about to be committed, or will lead to learning the location of a person who is unlawfully restrained or reasonably believed to be a witness in a criminal investigation or for whose arrest there is probable cause.

9)  Requires the magistrate to enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device if the magistrate finds that the information likely to be obtained by the installation and use of a pen register or a trap and trace device is relevant to an ongoing criminal investigation, and finds that there is probable cause to believe that the pen register or trap and trace device will lead to:

   a)  Stolen or embezzled property;

   b)  Property or things used as the means of committing a felony;

   c)  Property or things in the possession of any person with the intent to use them as a means of committing a public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing them from being discovered;

   d)  Evidence that tends to show a felony has been committed, or tends to show that a particular person has committed or is committing a felony;

   e)  Evidence that tends to show that sexual exploitation of a child, or possession of matter depicting sexual conduct of a person under 18 years of age, has occurred or is occurring;

   f)  The location of a person who is unlawfully restrained or reasonably believed to be a witness in a criminal investigation or for whose arrest there is probable cause;

   g)  Evidence that tends to show a violation of specified worker's compensation and insurance provisions; or

   h)  Evidence that tends to show violations of the Fish and Game Code or the Public Resources Code.

10) Authorizes the magistrate to seal portions of the application upon the request of the person seeking the pen register or trap and trap device, as specified.

11) Provides that information acquired solely pursuant to the authority for a pen register or trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the telephone number.

**AB 929**
Page 3

12) Requires that an ex parte order authorizing the installation and use of a pen register or a trap and trace device to specify the following:

    a) The identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached;

    b) The identity, if known, of the person who is the subject of the criminal investigation;

    c) The number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached and, in the case of a trap and trace device, the geographic limits of the trap and trace order;

    d) A statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates; and

    e) The order shall direct, if the applicant has requested, the furnishing of information, facilities, and technical assistance necessary to accomplish the installation of the pen register or trap and trace device.

13) An order authorizing the installation and use of a pen register or a trap and trace device may not exceed a period of 60 days, which may be extended by a period of no more than 60 days if there is continued probable cause that the information or items sought are likely to be obtained under the extension.

14) Requires an authorization order or extension to direct that the order be sealed until otherwise ordered by the magistrate or a judge of the superior court, and that the person owning or leasing the line to which the pen register or trap and trace device is attached not disclose the existence of the register, device or investigation.

15) Requires a communication service provider, landlord, custodian, or other person to immediately provide the peace officer all information, facilities, and technical assistance necessary to install the pen register or trap and trade device, as specified, and to provide results to the peace officer at reasonable intervals during regular business hours for the duration of the order.

16) Authorizes the magistrate to examine on oath the person seeking the pen register or trap and trace device and any witnesses the person may produce, and may take his or her affidavit or their affidavits in writing.

17) Authorizes a magistrate, upon oral application by a peace officer, to grant oral approval for the installation and use of a pen register or a trap and trace device, without an order, if he or she determines all of the following:

    a) There are grounds upon which a 60-day order could be issued:

    b) There is probable cause to believe that an emergency situation exists with respect to the investigation of a crime; and

    c) There is probable cause to believe that a substantial danger to life or limb exists.

18) Requires the peace officer who made the oral application to submit a written application for an order to the original magistrate by midnight of the second full court day after the pen register or trap and trace device is installed. If such an order is issued, the order shall cite the time of the oral approval and shall be retroactive to the time of the original oral approval.

19) Requires that, in the absence of an authorizing order, the use under the oral approval shall immediately terminate when the information sought is obtained, when the application for the order is denied, or by midnight of the second full court day after the pen register or trap and trace device is installed, whichever is earlier.

20) Requires a communication service provider, landlord, custodian, or other person who provides facilities or technical assistance pursuant to this section to be be reasonably compensated by the requesting peace officer's law enforcement agency for the reasonable expenses incurred in providing the facilities and assistance.

21) Defines the terms "wire communication," "electric communication," "pen register," and "trap and trace device."

22) Provides that no reimbursement is required because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, or changes the definition of a crime.

**EXISTING LAW**:

1) Authorizes the Attorney General or a district attorney to make a written application to a judge of a superior court for an order permitting the interception of wire communication and electronic communication, as defined. (Penal Code (PC) Section 629.50)

2) Permits an application to be made informally and granted orally if an emergency situation exists, and other factors are present. (PC 629.56)

3) Conditions the granting of an oral approval on the filing of a written application by midnight of the second full court day after the oral approval is made. (PC 629.56(b))

4) Prohibits a communication interception from lasting for longer than 30 days. (PC 629.58)

5) Permits an extension of the original order, not to exceed 30 days, upon a showing that there is continued probable cause that the information sought is likely to be obtained under the extension. (PC 629.58)

**FISCAL EFFECT**: Unknown

**COMMENTS**:

1) <u>Purpose of this bill</u>. This bill is intended to authorize state and local law enforcement to seek emergency orders for pen registers/trap and trace devices used in telephone surveillance, while requiring as a precondition a standard of evidence higher than under federal law. This

bill is co-sponsored by the Los Angeles County District Attorney's Office and the Los
Angeles County Sheriff's Department.

2) <u>Author's statement</u>.  According to the author, "Federal law allows law enforcement agencies
to use pen register and trap and trace devices, but they must obtain a court order from a judge
prior to the installation of the device. However, during an emergency situation, they may use
these devices without a court order if they obtain the court order within 48 hours of the use of
the device. Law enforcement agencies must demonstrate that there is reasonable suspicion
that the use of the device is relevant to an ongoing criminal investigation and will lead to
obtaining evidence of a crime for a judge to authorize the use.

"Though federal law authorizes states and local law enforcement officers to use pen register
and trap and trace devices by obtaining a court order first, it does not allow them to obtain an
emergency order unless there is a state statue authorizing and creating a process for states
and local law enforcement officers to do so.

"AB 929 will provide law enforcement officers with a critical tool in protecting public safety
during ongoing criminal investigations and emergency situations by authorizing the use of a
pen register or a trap and trace device based on a finding of probable cause."

3) <u>Pen registers/trap and trace devices</u>.  As noted above, pen registers/trap and trace devices are
used by law enforcement for telephone surveillance to record incoming and outgoing phone
numbers from a tapped line. Historically, "pen registers" are used to record outgoing
numbers from a particular telephone line, while "trap and trace" devices allow them to record
the numbers that call in. The two terms are often used together, because the two technologies
are almost always requested together. For purposes of simplicity, they will be jointly
referred to here as a "pen/trap" device.

According to the author, "these technologies are extremely useful for law enforcement in
situations such as gang and narcotic investigations. Federal law allows law enforcement
agencies to use pen register and trap and trace devices, but they must obtain a court order
from a judge prior to the installation of the device [which cannot exceed 60 days in duration].
However, during an emergency situation, they may use these devices without a court order if
they obtain the court order within 48 hours of the use of the device. Law enforcement
agencies must demonstrate that there is reasonable suspicion that the use of the device is
relevant to an ongoing criminal investigation and will lead to obtaining evidence of a crime
for a judge to authorize the use." A pen/trap order is only for the capture of incoming and
outgoing phone numbers, and not to record audio or text messages, or to obtain real-time
geophysical data on a cellphone.

However, there is a legal complication with the use of emergency orders. The Los Angeles
District Attorney's Office writes, "[t]hough federal law authorizes states and local law
enforcement officers to use pen register and trap and trace devices by obtaining a court order
first, it does not allow them to obtain an emergency order unless there is a state statute
authorizing and creating a process for states and local law enforcement officers to do so."
California does not have such an authorizing statute, although six other states do: Alabama,
Florida, George, Iowa, Texas and Washington.

As a result of the lack of an authorizing statute, the Los Angeles District Attorney's Office

suggests that some law enforcement agencies have utilized warrantless emergency declarations without proper authorization, which is technically a federal misdemeanor.

In response, AB 929 would explicitly authorize state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations.

4) <u>Standards of evidence</u>.  As noted above, pen/trap orders sought on the basis of federal law, such as those sought by federal law enforcement in federal courts, require the requesting agency to prove "reasonable suspicion," a standard lower than probable cause (described below), but more than an 'inchoate and unparticularized suspicion or hunch', based on specific and articulable facts, taken together with rational inferences from those facts, and associated with a specific individual.  It is often applied as the standard of evidence sufficient for a police officer to stop and frisk an individual.  (*see Terry v. Ohio*, 392 U.S. 1, 1968)

By comparison, Ballantine's Law Dictionary defines "probable cause" as "a reasonable amount of suspicion, supported by circumstances sufficiently strong to justify a prudent and cautious person's belief that certain facts are probably true." Probable cause is considered a higher standard of evidence than reasonable suspicion, and is generally used as the basis for arrests or search warrants.

Notably, there is some variation in the standards of evidence used for pen/trap orders here in California. According to the Los Angeles District Attorney's Office, the California Attorney General's office has issued a legal opinion that state law enforcement officers should be required to meet the higher probable cause standard when seeking a pen/trap order from a state court judge since 2003 due to the right of privacy provisions in the California Constitution. Los Angeles County, and some other counties as well, have decided to apply the higher standard to their own requests for pen/trap orders, but not all counties have followed suit, in large part because the Attorney General's opinion is advisory only.

This bill would explicitly require the higher probable cause standard for all pen/trap orders obtained by a state or local law enforcement agency from a California magistrate.

5) <u>Arguments in support</u>.  According to the Los Angeles County District Attorney's Office, "[AB 929] would authorize state and local law enforcement officers to use pen register and trap and trace devices under state law. AB 929 would also authorize the issuance of emergency pen registers and trap and trace devices. Under the provisions of AB 929 a California court could issue a court order authorizing the use of a pen register and/or a trap and trace device upon a showing of probable cause which is a higher standard than the reasonable suspicion standard required under federal law...AB 929 would create a comprehensive pen register/trap and trace device statute in the Penal Code to cover all requests for pen registers and trap and trace devices in California, including emergency open registers."

6) <u>Question for the Committee</u>.  The key privacy question posed by this bill is how the authorization of pen registers and trap and trace devices under a probable cause standard of evidence would impact individual privacy.

As noted above, the federal standard of evidence for getting a pen/trap order is reasonable suspicion – and will remain that way.  Federal agents going to federal court in California will

still be able to get pen/trap orders under the reasonable suspicion standard provided by federal law. And by default, state agencies working joint state/federal investigations seeking a similar order from a federal magistrate under the federal statute would abide by the same standard.

However, some agencies, such as the Los Angeles District Attorney's Office, have opted to impose a higher standard – probable cause – on their own pen/trap orders, voluntarily. As a result, some law enforce agencies in other counties currently abide by the lower federal standard when seeking a pen/trap order, while others voluntarily follow the higher standard.

This bill would impose the higher standard of probable cause on all state and local law enforcement agencies and thereby require some of those agencies to raise the standard they are currently using. To the extent that a higher evidentiary standard means that law enforcement must show more evidence of a potential crime before they can lawfully utilize invasive surveillance technology like a pen/trap, individual privacy would arguably be better protected by this bill.

7) <u>Double-referral</u>. This bill was double-referred to the Assembly Public Safety Committee, where it was heard on April 7, 2015, and passed on a 6-0 vote.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

Los Angeles County District Attorney's Office (co-sponsor)
Los Angeles County Sheriff's Department (co-sponsor)
Association for Los Angeles Deputy Sheriffs
California District Attorneys Association
California Fraternal Order of Police
California State Sheriffs' Association
California Statewide Law Enforcement Association
Long Beach Police Officers Association
Los Angeles County Professional Peace Officers Association
Los Angeles Police Protective League
Riverside Sheriffs Association
Sacramento County Deputy Sheriffs' Association
Santa Ana Police Officers Association

**Opposition**

None received.

**Analysis Prepared by**: Hank Dempsey / P. & C.P. / (916) 319-2200

# EXHIBIT C

Date of Hearing:   April 29, 2015

## ASSEMBLY COMMITTEE ON APPROPRIATIONS
Jimmy Gomez, Chair
AB 929 (Chau) – As AmendedApril 15, 2015

| Policy Committee: | Public Safety | Vote: | 7 - 0 |
| | Privacy and Consumer Protection | | 11 - 0 |

Urgency:  No        State Mandated Local Program:  Yes        Reimbursable:  No

**SUMMARY**:

This bill authorizes state and local law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices in telephone surveillance, if there is probable cause to believe that their use will lead to evidence of a crime.  Specifically, this bill:

1) Prohibits a person from installing or using a pen register or a trap and trace device without first obtaining a court order, as specified.

2) Defines "pen register" as a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication.

3) Defines "trap and trace device" as device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

4) Provides that a violation of these provisions is punishable by a fine not exceeding $2,500, and/or by imprisonment in county jail not exceeding one year.

5) Specifies the offenses for which an order for installation of a pen register or a trap and trace device may be granted.

**FISCAL EFFECT**:

Likely minor nonreimbursable costs for enforcement, offset to some extent by fine revenues.

**COMMENTS**:

1) **Author's Statement**: According to the author, "As technology advances, criminals are becoming more and more sophisticated in their use of technology to commit crimes and avoid law enforcement.  As a result, law enforcement officials have a variety of electronic tools to counter this and help them apprehend criminals in this age of rapidly changing technology.

   "One of the tools available to law enforcement is called a 'pen register' which allows law enforcement officers to record all outgoing numbers from a particular telephone line.  In

addition, another tool law enforcement uses is called a "trap and trace device" which allows them to record what numbers have called a specific telephone line, i.e. all incoming phone numbers. Both pen registers and trap and trace devices do not record audio or text messages and cannot be used to obtain real-time location data on a cellular telephone. But these tools are extremely useful for law enforcement in situations such as gang and narcotic investigations."

"AB 929 would authorize state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations. The bill will require law enforcement officers to obtain a court order before using such devices by providing a judge with information that the use of information is relevant to an ongoing criminal investigation, and that there is probable cause to believe that the pen register or trap and trace device will lead to obtaining evidence of a crime."

"This higher standard of proof (probable cause vs. reasonable suspicion) is more restrictive than under federal law and is more consistent with California law governing search warrants. The bill would prohibit the installation and use of the device for longer than 60 days, but would permit an extension if there is proof of continuing probable cause to a judge. "

2) **General Background:** Federal law allows law enforcement agencies to use pen register and trap and trace devices, but they must obtain a court order from a judge prior to the installation of the device. However, during an emergency situation, law enforcement agencies may use these devices without a court order if they obtain the court order within 48 hours of the use of the device. Law enforcement agencies must demonstrate that there is reasonable suspicion that the use of the device is relevant to an ongoing criminal investigation and will lead to obtaining evidence of a crime for a judge to authorize the use.

Though federal law authorizes states and local law enforcement officers to use pen register and trap and trace devices by obtaining a court order first, it does not allow them to obtain an emergency order unless there is a state statute authorizing and creating a process for states and local law enforcement officers to do so. To date, California does not have a state statute authorizing the use of pen registers or trap and trace devices.

**Analysis Prepared by**:   Pedro R. Reyes / APPR. / (916) 319-2081

# Exhibit D

Date of Hearing:  March 29, 2016
Counsel:        Gabriel Caswell

ASSEMBLY COMMITTEE ON PUBLIC SAFETY
Reginald Byron Jones-Sawyer, Sr., Chair

AB 1924 (Bigelow) – As Introduced February 11, 2016
As Proposed to Amended in Committee

**SUMMARY**: Provides an exemption from the Electronic Communications Privacy Act (ECPA) for pen registers and trap and trace devices to permit authorization for the devices to be used for 60 days. Specifically, **this bill**:

1) Provides a statutory exemption in ECPA for pen registers and trap and trace devices that will ensure that orders for these devices are valid for 60 days rather than 10 days provided for in ECPA.

2) Ensures that telecommunication providers are compensated for their work when complying with a court order for a pen register or trap and trace device.

3) Clarifies that courts may suppress any information illegally obtained from a pen register or trap trace device.

**EXISTING FEDERAL LAW**:

1) Provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. (U.S. Const., 4th Amend.; Cal. Const., art. I, § 13.)

2) Provides, except as provided, no person may install or use a pen register or a trap and trace device without first obtaining a court order under section 3123 of this *title [18 USCS § 3123]* or under the Foreign Intelligence Surveillance Act of 1978 (*50 U.S.C. 1801* et seq.). (18 USCS § 3121.)

   a) The prohibition does not apply with respect to the use of a pen register or a trap and trace device by a provider of electronic or wire communication service relating to the operation, maintenance, and testing of a wire or electronic communication service or to the protection of the rights or property of such provider, or to the protection of users of that service from abuse of service or unlawful use of service; or to record the fact that a wire or electronic communication was initiated or completed in order to protect such provider, another provider furnishing service toward the completion of the wire communication, or a user of that service, from fraudulent, unlawful or abusive use of service; or where the consent of the user of that service has been obtained. (18 USCS § 3121, subds. (a) & (b).)

b) A government agency authorized to install and use a pen register or trap and trace device under this chapter (*18 USCS §§ 3121* et seq.0 or under State law shall use technology reasonably available to it that restricts the recording or decoding of electronic or other impulses to the dialing, routing, addressing, and signaling information utilized in the processing and transmitting of wire or electronic communications so as not to include the contents of any wire or electronic communications. (18 USCS § 3121, subd. (c).)

c) Whoever knowingly violates the prohibition shall be fined under this title or imprisoned not more than one year, or both.

3) Provides that unless prohibited by state law, a state investigative or law enforcement officer may make application for an order or an extension of an order authorizing or approving the installation and use of a pen register or a trap and trace device under this chapter, in writing under oath or equivalent affirmation, to a court of competent jurisdiction of such state. (18 USCS § 3122.)

4) Provides that an attorney for the Government, upon an application, the court shall enter an ex parte order authorizing the installation and use of a pen register or trap and trace device anywhere within the United States, if the court finds that the attorney for the Government has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation. The order, upon service of that order, shall apply to any person or entity providing wire or electronic communication service in the United States whose assistance may facilitate the execution of the order. Whenever such an order is served on any person or entity not specifically named in the order, upon request of such person or entity, the attorney for the Government or law enforcement or investigative officer that is serving the order shall provide written or electronic certification that the order applies to the person or entity being served. (18 USCS § 3121, subd. (a)(1).)

5) Provides that a state investigative or law enforcement officer, upon an application made as specified, the court shall enter an ex parte order authorizing the installation and use of a pen register or trap and trace device within the jurisdiction of the court, if the court finds that the State law enforcement or investigative officer has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation. (18 USCS § 3121, subd. (a)(2).)

6) Provides that where the law enforcement agency implementing an ex parte order under this subsection seeks to do so by installing and using its own pen register or trap and trace device on a packet-switched data network of a provider of electronic communication service to the public, the agency shall ensure that a record will be maintained which will identify: (18 USCS § 3121, subd. (a)(3).)

a) Any officer or officers who installed the device and any officer or officers who accessed the device to obtain information from the network;

b) The date and time the device was installed, the date and time the device was uninstalled, and the date, time, and duration of each time the device is accessed to obtain information;

c)  The configuration of the device at the time of its installation and any subsequent
    modification thereof; and

d)  Any information which has been collected by the device.

7)  Provides to the extent that the pen register or trap and trace device can be set automatically to
    record this information electronically, the record shall be maintained electronically
    throughout the installation and use of such device. (18 USCS § 3121, subd. (a)(3).)

8)  States that the record maintained shall be provided ex parte and under seal to the court which
    entered the ex parte order authorizing the installation and use of the device within 30 days
    after termination of the order (including any extensions thereof). (18 USCS § 3121, subd.
    (a)(3).)

9)  An order issued for installation of a pen register or track and trace device shall include: (18
    USCS § 3121, subd. (b).)

    a)  The identity, if known, of the person to whom is leased or in whose name is listed the
        telephone line or other facility to which the pen register or trap and trace device is to be
        attached or applied;

    b)  The identity, if known, of the person who is the subject of the criminal investigation;

    c)  The attributes of the communications to which the order applies, including the number or
        other identifier and, if known, the location of the telephone line or other facility to which
        the pen register or trap and trace device is to be attached or applied, and, in the case of an
        order authorizing installation and use of a trap and trace device, the geographic limits of
        the order; and

    d)  A statement of the offense to which the information likely to be obtained by the pen
        register or trap and trace device relates; and

    e)  Shall direct, upon the request of the applicant, the furnishing of information, facilities,
        and technical assistance necessary to accomplish the installation of the pen register or
        trap and trace device.

10) Provides that an order issued under this section shall authorize the installation and use of a
    pen register or a trap and trace device for a period not to exceed sixty days. (18 USCS §
    3121, subd.(c).)

    a)  Provides that extensions of such an order may be granted, but only upon an application
        for an order and upon the judicial finding required as specified. The period of extension
        shall be for a period not to exceed sixty days.

    b)  States that nondisclosure of existence of pen register or a trap and trace device. An order
        authorizing or approving the installation and use of a pen register or a trap and trace
        device shall direct that the order be sealed until otherwise ordered by the court; and the
        person owning or leasing the line or other facility to which the pen register or a trap and
        trace device is attached, or applied, or who is obligated by the order to provide assistance

to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court.

11) Provides that notwithstanding any other provision, any investigative or law enforcement officer, specially designated by the Attorney General, the Deputy Attorney General, the Associate Attorney General, any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General, or by the principal prosecuting attorney of any state or subdivision thereof acting pursuant to a statute of that state, who reasonably determines that: (18 USCS § 3125.)

   a) an emergency situation exists that involves;

   b) immediate danger of death or serious bodily injury to any person;

   c) conspiratorial activities characteristic of organized crime;

   d) an immediate threat to a national security interest; or

   e) an ongoing attack on a protected computer that constitutes a crime punishable by a term of imprisonment greater than one year;

12) Provides that in the absence of an authorizing order, such use shall immediately terminate when the information sought is obtained, when the application for the order is denied or when forty-eight hours have lapsed since the installation of the pen register or trap and trace device, whichever is earlier. (18 USCS § 3125.)

## EXISTING STATE LAW:

1) Defines a "search warrant" as a written order in the name of the people, signed by a magistrate and directed to a peace officer, commanding him or her to search for a person or persons, a thing or things, or personal property, and in the case of a thing or things or personal property, bring the same before the magistrate. (Pen. Code, § 1523.)

2) States that a search warrant may be issued upon any of the following grounds:

   a) When the property was stolen or embezzled.

   b) When the property or things were used as the means of committing a felony.

   c) When the property or things are in the possession of any person with the intent to use them as a means of committing a public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing them from being discovered.

   d) When the property or things to be seized consist of any item or constitute any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony.

e) When the property or things to be seized consist of evidence that tends to show that sexual exploitation of a child, or possession of matter depicting sexual conduct of a person under the age of 18 years, has occurred or is occurring.

f) When there is a warrant to arrest a person.

g) When a provider of electronic communication service or remote computing service has records or evidence, showing that property was stolen or embezzled constituting a misdemeanor, or that property or things are in the possession of any person with the intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their discovery.

h) When a provider of electronic communication service or remote computing service has records or evidence showing that property was stolen or embezzled constituting a misdemeanor, or that property or things are in the possession of any person with the intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their discovery.

i) When the property or things to be seized include an item or any evidence that tends to show a violation of the Labor Code, as specified.

j) When the property or things to be seized include a firearm or any other deadly weapon at the scene of, or at the premises occupied or under the control of the person arrested in connection with, a domestic violence incident involving a threat to human life or a physical assault.

k) When the property or things to be seized include a firearm or any other deadly weapon that is owned by, or in the possession of, or in the custody or control of, a person described in subdivision (a) of Section 8102 of the Welfare and Institutions Code.

l) When the property or things to be seized include a firearm that is owned by, or in the possession of, or in the custody or control of, a person who is subject to the prohibitions regarding firearms under specified provisions of the Family Code.

m) When the information to be received from the use of a tracking device constitutes evidence that tends to show that either a felony or a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code.

n) When a sample of the blood of a person constitutes evidence that tends to show a violation of misdemeanor driving under the influence and the person from whom the sample is being sought has refused an officer's request to submit to, or has failed to complete, a blood test.

o) When the property or things to be seized are firearms or ammunition or both that are owned by, in the possession of, or in the custody or control of a person who is the subject of a gun violence restraining order. This final provision does not go into effect until

January 1, 2016.  (Pen. Code, § 1524, subd. (a).)

3) Provides that a search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person to be searched or searched for, and particularly describing the property, thing, or things and the place to be searched.  (Pen. Code, § 1525.)

4) Requires a magistrate to issue a search warrant if he or she is satisfied of the existence of the grounds of the application or that there is probable cause to believe their existence.  (Pen. Code, § 1528, subd. (a).)


**FISCAL EFFECT**:

**COMMENTS**:

1) **Author's Statement**:  According to the author, "AB 1924 will guarantee law enforcement can utilize a 'pen register' and 'trap and trace device' as a public safety tool by amending EPCA to add an exemption for 'pen register' and 'trap and trace devices.'  AB 1924 will still require a court to find that the use of a pen register/trap and trace device is relevant to an ongoing criminal investigation, and that there is probable cause to believe that the pen register or trap and trace device will lead to obtaining evidence of a crime."

2) **Pen Registers and Trap and Trace Devices:**  Federal law allows law enforcement agencies to use pen register and trap and trace devices, but they must obtain a court order from a judge prior to the installation of the device.  However, during an emergency situation, law enforcement agencies may use these devices without a court order if they obtain the court order within 48 hours of the use of the device.  Law enforcement agencies must demonstrate that there is reasonable suspicion that the use of the device is relevant to an ongoing criminal investigation and will lead to obtaining evidence of a crime for a judge to authorize the use.

Though federal law authorizes states and local law enforcement officers to use pen register and trap and trace devices by obtaining a court order first, it does not allow them to obtain an emergency order unless there is a state statute authorizing and creating a process for states and local law enforcement officers to do so.  To date, California does not have a state statute authorizing the use of pen registers or trap and trace devices.

Pen registers and track and trace devices generally track incoming and outgoing telephone calls.  They are often utilized by law enforcement to track which people in an investigation are communicating with one another and at what times.  Unlike a wiretap authorization, pen registers and track and trace devices do not provide law enforcement with the content of the messages which are transmitted.  Wiretap authorizations are therefore subject to a much higher standard of scrutiny.  Under federal law, these authorizations can be granted on a reasonable suspicion standard, while search warrants are subject to a higher standard of probable cause.

3) **AB 929 (Chau):**  Last year the legislature passed and the governor signed AB 929 (Chau), Chapter 204, Statutes of 2015.  AB 929 authorized state and local law enforcement to use pen register and trap and trace devices under state law, and permits the issuance of emergency pen registers and trap and trace devices.  Under this legislation, the authorization for the use

of a trap and trace device or a pen register was for 60 days from the date of issuance, with extensions of up to 60 days. However, the governor signed AB 929 prior to signing the ECPA and as a result the authorization was chaptered out by the ECPA's 10-day authorizations.

4) **Electronic Communications Privacy Act (ECPA)**: Last year the legislature passed SB 178 (Leno), Chapter 651, Statutes of 2015, which prohibited a government entity from compelling the production of, or access to, electronic-communication information or electronic-device information without a search warrant or wiretap order, except under specified emergency situations. Specifically, this new law prohibits a government entity from:

   a) Compelling the production, of or access to, electronic communication information from a service provider;

   b) Compelling the production of or access to electronic device information from any person or entity other than the authorized possessor of the device; and,

   c) Accessing electronic device information by means of physical interaction or electronic communication with the device, although voluntary disclosure to a government entity is permitted.


   The ECPA also permits a government entity to compel the production of, or access to, electronic communication information subject from a service provider, or compel the production of or access to electronic device information from any person or entity other than the authorized possessor of the device pursuant to a warrant, wiretap order, order for electronic reader records, or subpoena issued pursuant to existing state law, as specified.

5) **Argument in Support**: According to the *Los Angeles District Attorney*, "Last year AB 929 (Chau) was signed into law by the governor on August 13, 2015. AB 929 authorized California law enforcement officers to apply for the installation of a pen register and trap and trace device as well as an emergency oral pen register and trap and trace device under state, not federal, law.

"A pen register records all numbers called from (outgoing) a particular telephone line. A 'trap and trace device' records what numbers had called a specific telephone, i.e. all *incoming* phone numbers. Pen registers and trap and trace devices are extremely useful investigative tools. They are used to identify accomplices, for example.

"AB 929 was necessary because federal law requires states to have an enabling statute authorizing the use of a pen register/trap and trace device in emergency situations, in order for local law enforcement agencies to lawfully obtain an emergency pen register/trap and trace device order.

"Last year Governor Brown also signed SB 178 (Leno) the Electronic Communication Privacy Act (ECPA) into law on October 8, 2015. The ECPA adds Chapter 3.6 to the Penal Code. Absent a statutory exemption, ECPA precludes a government entity from compelling the production or access to electronic information from a service provider, compelling the production or access to electronic device information from any person or entity other than

the authorized possessor of the device, or accessing electronic device information by means of physical interaction or electronic communication with the electronic device without a search warrant.

"The ECPA was undoubtedly drafted to regulate law enforcement's use of electronic serial number (ESN) identification technology. However, an unintended consequence of the ECPA is the potential nullification of AB 929. The ECPA's definitions of electronic communication and electronic communication information include the call detail records that are captured by a pen register/trap and trace device. The ECPA requires the issuance of a search warrant pursuant to Chapter 3 (PC 1523 et seq.) for electronic information. The new pen register/trap and trace device statute is in Chapter 1.5. The ECPA would therefore require law enforcement to seek a search warrant in order to obtain a pen register. Search warrants are valid for ten days, whereas pen register/trap and trap device orders are valid for 60 days under federal law and AB 929.

"Furthermore, the AB 929 amendment process resulted in a drafting error. Language regarding the compensation of telecommunication providers by law enforcement for reasonable expenses incurred while complying with the court's order was inadvertently deleted from section 638.52, which applies to written applications for a pen register/trap and trace order. The language was only included in section 638.53, which governs an oral application for an order in an emergency.

"AB 1924 provides the necessary statutory exemption in ECPA for pen registers and trap and trace devices that will ensure that orders for these devices are valid for 60 days (as called for in AB 929) rather than 10 days provided for in ECPA and ensures that telecommunication providers are compensated for their work when complying with a court order for a pen register or trap and trace device. AB 1924 also provides additional privacy protections for Californians by including a language that would allow a court to suppress any information illegally obtained from a pen register or trap trace device.

"AB 1924 still requires a court to find that the use of a pen register/trap and trace device is relevant to an ongoing criminal investigation, and that there is probable cause to believe that the pen register or trap and trace device will lead to obtaining evidence of a crime. We are continuing to work with representatives from the ACLU to draft language that will provide a time frame for law enforcement agencies to provide notice to individuals whose electronic devices were the subject of a court ordered pen register and/or trap and trace device."

6)  **Prior Legislation**:

    a)  AB 929 (Chau), Chapter 204, Statutes of 2015, authorized state and local law enforcement to use pen register and trap and trace devices under state law, and permits the issuance of emergency pen registers and trap and trace devices.

    b)  SB 178 (Leno), Chapter 651, Statutes of 2015, which prohibited a government entity from compelling the production of, or access to, electronic-communication information or electronic-device information without a search warrant or wiretap order, except under specified emergency situations.

**REGISTERED SUPPORT / OPPOSITION**:

**AB 1924**
Page 9

**Support**

Los Angeles County Sheriff's Office (co-sponsor)
Los Angeles District Attorney's Office (co-sponsor)
Association for Deputy District Attorneys
Association for Los Angeles Deputy Sheriffs
California Civil Liberties Advocacy
California District Attorneys Association
California Police Chiefs Association
California State Sheriffs' Association
Los Angeles Police Protective League
Professional Peace Officers Association
Riverside Sheriffs' Association

**Opposition**

None

**Analysis Prepared by**:   Gabriel Caswell / PUB. S. / (916) 319-3744

# Exhibit E

Date of Hearing:  May 4, 2016

## ASSEMBLY COMMITTEE ON APPROPRIATIONS
Lorena Gonzalez,  Chair
AB 1924 (Bigelow)  – As Amended April 5, 2016

| Policy Committee: | Public Safety | Vote: | 7 - 0 |
| | Privacy and Consumer Protection | | 11 - 0 |

Urgency:  No        State Mandated Local Program:  No        Reimbursable:  No

**SUMMARY**:

This bill clarifies  that law enforcement  agencies  have the authority  to seek and use and order for
a pen register/trap  and trace-device,  which are telephone  surveillance  devices used to record
incoming  and outgoing  phone numbers,  for up to 60 days instead  of 10 days, and provides  for a
suppression  remedy  as well as reasonable  compensation  to private companies  and individuals
that assist in those efforts.

**FISCAL EFFECT**:

Minor costs to the Department  of Justice if the Attorney General chooses  to take civil action to
compel any government  entity to suppress information  obtained improperly.

**COMMENTS**:

**Background/Purpose.**  Federal law allows  law enforcement  agencies  to use pen register and
trap and trace devices, but they must obtain a court order from a judge prior to the installation of
the device. However,  during  an emergency  situation,  law enforcement  agencies  may use these
devices  without  a court order if they obtain the court order within  48 hours of the use of the
device.  Law enforcement  agencies  must demonstrate  that there is reasonable  suspicion  that the
use of the device is relevant  to an ongoing  criminal  investigation  and will lead to obtaining
evidence  of a crime for a judge to authorize  the use.

AB 929 (Chau), Chapter 202/2015, authorized  California  law enforcement  officers  to apply for
the installation  of a pen register  and trap and trace device as well as an emergency  oral pen
register  and trap and trace device under state, not federal,  law.

SB 178 (Leno), Chapter 651/2015, created the California  Electronic  Communications  Privacy
Act (CECPA),  which generally  requires  law enforcement  entities  to obtain a search warrant
before accessing  data on an electronic  device or from an online  service provider.

The ECPA requires  law enforcement  to seek a search warrant  in order to obtain a pen register;
however,  these warrants  are valid for 10 days, whereas pen register/trap  and trap device orders
are valid for 60 days under federal law and AB 929.

This bill is intended  to address a conflict  between recently  amended statutes  that interfere  with
law enforcement  agencies' ability  to seek a 60-day pen register/trap  and trace-device.
**Analysis Prepared by**:    Pedro Reyes / APPR. / (916) 319-2081

# Exhibit F

# SENATE COMMITTEE ON PUBLIC SAFETY
### Senator Loni Hancock, Chair
### 2015 - 2016  Regular

| | | | | |
|---|---|---|---|---|
| **Bill No:** | AB 1924 | **Hearing Date:** | June 28, 2016 | |
| **Author:** | Low | | | |
| **Version:** | May 23, 2016 | | | |
| **Urgency:** | Yes | | **Fiscal:** | Yes |
| **Consultant:** | MK | | | |

### Subject:  *Pen Registers:  Trap and Trace Devices:  Orders*

## HISTORY

Source:          Los Angeles County Sheriff's Department

Prior Legislation:        AB 929 (Chau) – Ch. 204, Stats. 2015

Support:        California Civil Liberties Advocacy; California State Sheriffs' Association; California Police Chiefs Association; California District Attorneys Association; San Diego County District Attorney; Los Angeles District Attorney's Office

Opposition:

Assembly Floor Vote:                                72 - 0

## PURPOSE

***The purpose of this bill is to provide an exemption from the Electronic Communications Privacy Act (ECPA) for pen registers and trap and trace devices to permit authorization for the devices to be used for 60 days.***

*Existing Constitutional law* provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. (U.S. Constitution 4th Amend.; California Constitution art. I, § 13.)

*Existing federal law* provides that, except as provided, no person may install or use a pen register or a trap and trace device without first obtaining a court order under section 3123 of this *title [18 USCS § 3123]* or under the Foreign Intelligence Surveillance Act of 1978 (*50 U.S.C. 1801* et seq.). (18 USCS § 3121.)

- The prohibition does not apply with respect to the use of a pen register or a trap and trace device by a provider of electronic or wire communication service relating to the operation, maintenance, and testing of a wire or electronic communication service or to the protection of the rights or property of such provider, or to the protection of users of that service from abuse of service or unlawful use of service; or to record the fact that a wire or electronic communication was initiated or completed in order to protect such provider, another provider furnishing service toward the completion of the wire

communication, or a user of that service, from fraudulent, unlawful or abusive use of service; or where the consent of the user of that service has been obtained.

- A government agency authorized to install and use a pen register or trap and trace device under this chapter (18 USCS §§ 3121 *et seq*) or under State law shall use technology reasonably available to it that restricts the recording or decoding of electronic or other impulses to the dialing, routing, addressing, and signaling information utilized in the processing and transmitting of wire or electronic communications so as not to include the contents of any wire or electronic communications. (18 USCS § 3121 (c).)

- Whoever knowingly violates the prohibition shall be fined under this title or imprisoned not more than one year, or both. . (18 USCS § 3121 (a) & (b).)

*Existing federal law* provides that unless prohibited by state law, a state investigative or law enforcement officer may make application for an order or an extension of an order authorizing or approving the installation and use of a pen register or a trap and trace device under this chapter, in writing under oath or equivalent affirmation, to a court of competent jurisdiction of such state. (18 USCS § 3122.)

*Existing federal law* provides that an attorney for the Government, upon an application, the court shall enter an ex parte order authorizing the installation and use of a pen register or trap and trace device anywhere within the United States, if the court finds that the attorney for the Government has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation. The order, upon service of that order, shall apply to any person or entity providing wire or electronic communication service in the United States whose assistance may facilitate the execution of the order. Whenever such an order is served on any person or entity not specifically named in the order, upon request of such person or entity, the attorney for the Government or law enforcement or investigative officer that is serving the order shall provide written or electronic certification that the order applies to the person or entity being served. (18 USCS § 3121 (a)(1).)

*Existing federal law* provides that a state investigative or law enforcement officer, upon an application made as specified, the court shall enter an ex parte order authorizing the installation and use of a pen register or trap and trace device within the jurisdiction of the court, if the court finds that the State law enforcement or investigative officer has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation. (18 USCS § 3121 (a)(2).)

*Existing federal law* provides that where the law enforcement agency implementing an ex parte order under this subsection seeks to do so by installing and using its own pen register or trap and trace device on a packet-switched data network of a provider of electronic communication service to the public, the agency shall ensure that a record will be maintained which will identify:

- Any officer or officers who installed the device and any officer or officers who accessed the device to obtain information from the network;
- The date and time the device was installed, the date and time the device was uninstalled, and the date, time, and duration of each time the device is accessed to obtain information;
- The configuration of the device at the time of its installation and any subsequent modification thereof; and
- Any information which has been collected by the device. (18 USCS § 3121(a)(3).)

*Existing federal law* provides to the extent that the pen register or trap and trace device can be set automatically to record this information electronically, the record shall be maintained electronically throughout the installation and use of such device. (18 USCS § 3121(a)(3).)

*Existing federal law* states that the record maintained shall be provided ex parte and under seal to the court which entered the ex parte order authorizing the installation and use of the device within 30 days after termination of the order (including any extensions thereof). (18 USCS § 3121(a)(3).)

*Existing federal law* provides that an order issued for installation of a pen register or track and trace device shall include:

- The identity, if known, of the person to whom is leased or in whose name is listed the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied;
- The identity, if known, of the person who is the subject of the criminal investigation;
- The attributes of the communications to which the order applies, including the number or other identifier and, if known, the location of the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied, and, in the case of an order authorizing installation and use of a trap and trace device, the geographic limits of the order; and
- A statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates; and
- Shall direct, upon the request of the applicant, the furnishing of information, facilities, and technical assistance necessary to accomplish the installation of the pen register or trap and trace device. : (18 USCS § 3121(b).)

*Existing federal law* provides that an order issued under this section shall authorize the installation and use of a pen register or a trap and trace device for a period not to exceed sixty days.

- Extensions of such an order may be granted, but only upon an application for an order and upon the judicial finding required as specified. The period of extension shall be for a period not to exceed sixty days.

- Nondisclosure of existence of pen register or a trap and trace device. An order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that the order be sealed until otherwise ordered by the court; and the person owning or leasing the line or other facility to which the pen register or a trap and trace device is attached, or applied, or who is obligated by the order to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court. (18 USCS § 3121c).)

*Existing federal law* provides that notwithstanding any other provision, any investigative or law enforcement officer, specially designated by the Attorney General, the Deputy Attorney General, the Associate Attorney General, any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General, or by the principal prosecuting attorney of

any state or subdivision thereof acting pursuant to a statute of that state, who reasonably determines that:

- an emergency situation exists that involves immediate danger of death or serious bodily injury to any person;
- conspiratorial activities characteristic of organized crime;
- an immediate threat to a national security interest; or
- an ongoing attack on a protected computer that constitutes a crime punishable by a term of imprisonment greater than one year; (18 USCS § 3125.)

*Existing federal law* provides that in the absence of an authorizing order, such use shall immediately terminate when the information sought is obtained, when the application for the order is denied or when forty-eight hours have lapsed since the installation of the pen register or trap and trace device, whichever is earlier. (18 USCS § 3125.)

*Existing law* defines a "search warrant" as an order in writing in the name of the People, signed by a magistrate, directed to a peace officer, commanding him or her to search for a person or persons, a thing or things, or personal property, and in the case of a thing or things or personal property, bring the same before the magistrate. (Penal Code § 1523.)

*Existing law* provides that a search warrant may be issued upon any of the following grounds:

1) When the property was stolen or embezzled;
2) When the property or things were used as the means of committing a felony;
3) When the property or things are in the possession of any person with the intent to use them as a means of committing a public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing them from being discovered;
4) When the property or things to be seized consist of any item or constitute any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony;
5) When the property or things to be seized consist of evidence that tends to show that sexual exploitation of a child, or possession of matter depicting sexual conduct of a person under the age of 18 years, has occurred or is occurring;
6) When there is a warrant to arrest a person;
7) When a provider of electronic communication service or remote computing service has records or evidence, showing that property was stolen or embezzled constituting a misdemeanor, or that property or things are in the possession of any person with the intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their discovery;
8) When the property to be seized includes evidence of a violation of specified Labor Code sections;
9) When the property to be seized includes a firearm or deadly weapon or any other deadly weapon at the scene of a domestic violence offense;
10) When the property to be seized includes a firearm or deadly weapon owned by a person apprehended because of his or her mental condition;
11) When the property to be seized is a firearm in possession of a person prohibited under the family code;

12) When the information to be received from the use of a tracking device under shows a
    specified violation of the Fish and Game Code or Public Resources Code;
13) When a sample of blood would show evidence of a DUI; or,
14) Starting January 1, 2016, when the property to be seized is a firearm owned by a person
    subject to a gun violence restraining order. (Penal Code § 1524(a).)

*Existing law* provides that a search warrant cannot be issued but upon probable cause, supported
by affidavit, naming or describing the person to be searched or searched for, and particularly
describing the property, thing, or things and the place to be searched. (Penal Code, § 1525.)

*Existing law* requires a magistrate to issue a search warrant if he or she is satisfied of the
existence of the grounds of the application or that there is probable cause to believe their
existence. (Pen. Code, § 1528 (a).)

*Existing law* generally prohibits a person from installing or using a pen register or trap and trace
device except by court order or by the provider of electronic or wire communication under
specified circumstances. (Penal Code § 638.51))

*Existing law* provides that a peace officer may make an application to a magistrate for an order
authorizing the installation and use of a pen register or a trap and trace device under specified
circumstances. The application shall be in writing under oath. The applicant shall certify that the
information likely to be obtained is relevant to an ongoing criminal investigation and shall
include a statement of the offense to which the information likely be obtained by the pent register
or trap and trace device. (Penal Code § 638.52)

*Existing law,* as part of the Electronic Communications Privacy ACT (ECPA), specifies how and
when a government entity may access electronic device information by means of physical
interaction or electronic communication with the device. (Penal Code § 1546.1)

*This bill* provides a statutory exemption in ECPA for pen registers and trap and trace devices that
will ensure that orders for these devices are valid for 60 days rather than 10 days provided for in
ECPA.

*This bill* ensures that telecommunication providers are compensated for their work when
complying with a court order for a pen register or trap and trace device.

*This bill* clarifies that courts may suppress any information illegally obtained from a pen register
or trap trace device.

*This bill* provides that a government entity that obtains information from a trap and trace device
or a pen register shall provide notice to the targets, as specified.

## RECEIVERSHIP/OVERCROWDING CRISIS AGGRAVATION

For the past several years this Committee has scrutinized legislation referred to its jurisdiction
for any potential impact on prison overcrowding. Mindful of the United States Supreme Court
ruling and federal court orders relating to the state's ability to provide a constitutional level of
health care to its inmate population and the related issue of prison overcrowding, this Committee
has applied its "ROCA" policy as a content-neutral, provisional measure necessary to ensure that
the Legislature does not erode progress in reducing prison overcrowding.

On February 10, 2014, the federal court ordered California to reduce its in-state adult institution population to 137.5% of design capacity by February 28, 2016, as follows:

- 143% of design bed capacity by June 30, 2014;
- 141.5% of design bed capacity by February 28, 2015; and,
- 137.5% of design bed capacity by February 28, 2016.

In December of 2015 the administration reported that as "of December 9, 2015, 112,510 inmates were housed in the State's 34 adult institutions, which amounts to 136.0% of design bed capacity, and 5,264 inmates were housed in out-of-state facilities. The current population is 1,212 inmates below the final court-ordered population benchmark of 137.5% of design bed capacity, and has been under that benchmark since February 2015." (Defendants' December 2015 Status Report in Response to February 10, 2014 Order, 2:90-cv-00520 KJM DAD PC, 3-Judge Court, *Coleman v. Brown, Plata v. Brown* (fn. omitted).) One year ago, 115,826 inmates were housed in the State's 34 adult institutions, which amounted to 140.0% of design bed capacity, and 8,864 inmates were housed in out-of-state facilities. (Defendants' December 2014 Status Report in Response to February 10, 2014 Order, 2:90-cv-00520 KJM DAD PC, 3-Judge Court, *Coleman v. Brown, Plata v. Brown* (fn. omitted).)

While significant gains have been made in reducing the prison population, the state must stabilize these advances and demonstrate to the federal court that California has in place the "durable solution" to prison overcrowding "consistently demanded" by the court. (Opinion Re: Order Granting in Part and Denying in Part Defendants' Request For Extension of December 31, 2013 Deadline, NO. 2:90-cv-0520 LKK DAD (PC), 3-Judge Court, *Coleman v. Brown, Plata v. Brown* (2-10-14). The Committee's consideration of bills that may impact the prison population therefore will be informed by the following questions:

- Whether a proposal erodes a measure which has contributed to reducing the prison population;
- Whether a proposal addresses a major area of public safety or criminal activity for which there is no other reasonable, appropriate remedy;
- Whether a proposal addresses a crime which is directly dangerous to the physical safety of others for which there is no other reasonably appropriate sanction;
- Whether a proposal corrects a constitutional problem or legislative drafting error; and
- Whether a proposal proposes penalties which are proportionate, and cannot be achieved through any other reasonably appropriate remedy.

## COMMENTS

**1. Need for This Bill**

According to the author:

> Federal law allows law enforcement agencies to use pen register and trap and trace devices, but they must obtain a court order from a judge prior to the installation of the device. However, during an emergency situation, they may use these devices without a court order if they obtain the court order within 48 hours of the use of the device. Law enforcement agencies must demonstrate that there is

reasonable suspicion that the use of the device is relevant to an ongoing criminal investigation and will lead to obtaining evidence of a crime for a judge to authorize the use.

Last year AB 929 (Chau)… authorized California law enforcement officers to apply for the installation of a pen register and trap and trace device as well as an emergency oral pen register and trap and trace device under state, not federal law…

Last year Governor Brown also signed the Electronic Communication Privacy Act (SB 178) into law on October 8, 2015. The ECPA adds Chapter 3.6 to the Penal Code. Absent a statutory exemption, Penal Code section 15471(a) will preclude a government entity from compelling the production of our access to electronic communication information from a service provider, compelling the production of or access to electronic device information from any person or entity other than the authorized possessor of the device, or accessing electronic device information by means of physical interaction or electronic communication with the electronic device.

A government entity must obtain a search warrant issued pursuant to Chapter 3 (commencing with Penal Code section 1523) and subject to the requirement of Penal Code section 1546.1(d) to compel the production of or access to electronic communication information from a service provider, or compel production of or access to electronic device information from any person or entity other than the authorized possessor of the device.

    ***

The ECPA was undoubtedly drafted to regulate law enforcement's use of electronic serial number (ESN) identification technology. However, an unintended consequence of the ECPA is the potential nullification of AB 929. The ECPA's definitions of electronic communication and electronic communication information include the call detail records that are captured by a pen register/trap and trace device. The ECPA requires the issuance of a search warrant pursuant to Chapter 3 (PC 1523 et. Seq.) for electronic information. The new pen register/trap and trace device statute is in Chapter 1. The ECPA would therefore require law enforcement to seek a search warrant in order to obtain a pen register. Search warrants are valid for ten days, whereas pen register/trap and trap device orders are valid for 60 days under federal law and AB 929.

Furthermore, the AB 929 amendment process resulted in a drafting error. Language regarding the compensation of telecommunication providers by law enforcement for reasonable expenses incurred while complying with the court's order was inadvertently deleted from section 638.52, which applies to written applications for a pen register/trap and trace order. The language was only included in section 638.53, which governs an oral application for an order in an emergency.

AB 1924 still requires a court to make a finding that there is probable cause to grant an order for a pen register or a trap and trace device. We are working with the ACLU to draft amendments that would require law enforcement to provide notice to the identified targets of a pen register/trap trace order and to add suppression language that would statutorily authorize the suppression of any electronic information obtained from a pen register/trap trace order via a Penal Code Section 1538.5 motion.

## 2. Pen Registers and Trap and Trace Devices

Federal law allows law enforcement agencies to use pen register and trap and trace devices, but they must obtain a court order from a judge prior to the installation of the device. However, during an emergency situation, law enforcement agencies may use these devices without a court order if they obtain the court order within 48 hours of the use of the device. Law enforcement agencies must demonstrate that there is reasonable suspicion that the use of the device is relevant to an ongoing criminal investigation and will lead to obtaining evidence of a crime for a judge to authorize the use.

Though federal law authorizes states and local law enforcement officers to use pen register and trap and trace devices by obtaining a court order first, it does not allow them to obtain an emergency order unless there is a state statute authorizing and creating a process for states and local law enforcement officers to do so.

Pen registers and track and trace devices generally track incoming and outgoing telephone calls. They are often utilized by law enforcement to track which people in an investigation are communicating with one another and at what times. Unlike a wiretap authorization, pen registers and track and trace devices do not provide law enforcement with the content of the messages which are transmitted. Wiretap authorizations are therefore subject to a much higher standard of scrutiny. Under federal law, these authorizations can be granted on a reasonable suspicion standard, while search warrants are subject to a higher standard of probable cause.

AB 929 (Chau), Chapter 204, Statutes of 2015 authorized state and local law enforcement to use pen register and trap and trace devices under state law, and permitted the issuance of emergency pen registers and trap and trace devices. Under this legislation, the authorization for the use of a trap and trace device or a pen register was for 60 days from the date of issuance, with extensions of up to 60 days. However, the governor signed AB 929 prior to signing the ECPA and as a result the authorization was chaptered out by the ECPA's 10-day authorizations.

## 3. Electronic Communications Privacy Act (ECPA)

Last year the legislature passed SB 178 (Leno), Chapter 651, Statutes of 2015, which prohibited a government entity from compelling the production of, or access to, electronic-communication information or electronic-device information without a search warrant or wiretap order, except under specified emergency situations. Specifically, this new law prohibits a government entity from:

a) Compelling the production, of or access to, electronic communication information from a service provider;

b) Compelling the production of or access to electronic device information from any person or entity other than the authorized possessor of the device; and,

c) Accessing electronic device information by means of physical interaction or electronic communication with the device, although voluntary disclosure to a government entity is permitted.

The ECPA also permits a government entity to compel the production of, or access to, electronic communication information subject from a service provider, or compel the production of or access to electronic device information from any person or entity other than the authorized possessor of the device pursuant to a warrant, wiretap order, order for electronic reader records, or subpoena issued pursuant to existing state law, as specified.

## 4. Allowance of Pen Registers and Trap Devices

This bill makes an exception to the ECPA, allowing pen registers and trap or trace devices to be installed for 60 days. It also places notice requirements on the entity that obtains the information.

**-- END –**